IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

JACK COLBERT,

                Plaintiff,                Case No. 3:07 CV 493

-vs-

                                                        MEMORANDUM OPINION

CITY OF TOLEDO

                Defendant.

KATZ, J.

This case is before the Court on Defendants' motion (Doc. 45) for summary judgment as to all claims against them. In particular, Defendant Richard Moreno, a police officer, claims that he is entitled to qualified immunity for actions claimed by the Plaintiff, Jack Colbert, to have violated his Fourth Amendment rights. The Plaintiff has filed a response (Doc. 53). For the reasons stated below, the Defendants' motion will be granted.

**I. Background**

On August 31, 2006, at around 5:00 PM, Officer Richard Moreno of the Toledo Police Department initiated a traffic stop on Woodstock Avenue, in front of Plaintiff's residence. After stopping his vehicle, the driver punched Moreno and attempted to flee across the street. Moreno gave chase but was unable to catch the driver on foot. As the driver attempted to hop a fence, Moreno shot him with his Taser gun. The driver fell to the ground, but was still struggling as Moreno attempted to handcuff him. Still having difficulty in arresting the driver, Moreno called for assistance, and two other officers arrived on the scene to assist him.

By this time, a small crowd of people, including Plaintiff, had formed on the opposite side of the street from where Moreno was trying to handcuff the driver. Some people in the crowd,

including Plaintiff, were yelling at the officers to stop. Eventually, the officers were able to arrest the driver.

Moreno approached the crowd and ordered its members to leave the area. Though the rest of the crowd dispersed, Plaintiff, who is 6'3" and weighs 260 lbs., refused to leave. Eventually, Plaintiff did begin to retreat into his home, but Moreno told him to stop because he wished to speak to him. By this time, Moreno had decided to arrest Plaintiff for the crime of menacing, and called for more backup. Nonetheless, Plaintiff fled into his home and locked the door behind him.

Moreno broke down the door and went into Plaintiff's home, assisted by two other officers. Plaintiff turned to face the officers with his hands at his sides and his fists clenched. Moreno told Plaintiff to get on the ground, but Plaintiff refused to comply. Moreno then shot Plaintiff with his Taser, striking him at 17:15:46 (5:15 PM) with a shock that lasted six seconds. After Plaintiff fell to the floor, Moreno administered another Taser shock at 17:15:53. This shock lasted five seconds. Moreno then ordered Plaintiff to put his hands behind his back. At this point, another officer holstered his gun so that he could assist Moreno in handcuffing Plaintiff. Moreno administered one final Taser shock at 17:16:00; this shock lasted five seconds. The officers succeeded in handcuffing Plaintiff, who was charged with three counts of menacing; two counts of failure to have a handgun identification card; one count of drug possession; one count of possession of drug paraphernalia; and one count of failure to secure a dangerous ordinance. Plaintiff was eventually found guilty of failing to have a handgun identification card and sentenced to 179 days in the Corrections Center of Northwest Ohio.

**II. Standard of Review**

*A. Summary Judgment*

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id*. When considering a motion for summary judgment, a court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, a court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## *B. Qualified Immunity*

Qualified immunity protects government officials performing discretionary functions from civil liability under federal laws unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Like absolute immunity, qualified immunity "is an *immunity from suit* rather than a mere defense to liability . . . [and] is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). Thus, unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. *Id.*

Qualified immunity provides a broad range of protection, as it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

## III. Discussion

For essentially the same reasons well-stated in the decision of the Sixth District Court of Appeals, see *City of Toledo v. Colbert*, 2009 WL 1652833 (Ohio App. 6 Dist. June 12, 2009), this Court finds that the officers' initial entry into Plaintiff's home did not violate the Fourth Amendment. The Sixth District's reasoning was as follows: at the time of their entry, the officers had probable cause to arrest Plaintiff for the crime of menacing, as defined by Ohio law; Plaintiff fled into his home despite being told by Moreno to stop; and therefore the officers were lawfully in "hot pursuit" of Plaintiff at the time they entered his home. There is no genuine issue of material fact as to any of the premises relied upon by the Sixth District in its reasoning, which this Court agrees with entirely.

Careful analysis also shows that the officers' conduct upon entering Plaintiff's home was reasonable. It is not disputed that the first Taser shock was only issued after Plaintiff refused to comply with Moreno's direction to get on the ground. Faced with such refusal to follow verbal commands, Moreno was not required to take his chances at physically overpowering the 6'3", 260 lb. Plaintiff.

The second and third Taser shocks lasted a combined total of ten seconds. This is no longer a period of time than would take a reasonable officer to handcuff a suspect, and the record shows that the officers did not administer any further shocks after Plaintiff was handcuffed. Thus, these Taser shocks were reasonable measures, brief in duration, to ensure that Plaintiff could be secured and handcuffed without further attempts at resistence.

The Court has determined that the three officers named in this suit are entitled to qualified immunity. Plaintiff has also named the City of Toledo, the Toledo Police Department, and police chief Mike Navarre as defendants. For the reasons stated in the Defendants' motion (Doc. 45), to

which Plaintiff has not responded, the Court finds that all claims against these defendants must be dismissed as well. Similarly, to the extent the Plaintiff brings any state-law claims against the named officers, these must be dismissed as well, for the reasons stated in Defendants' motion, to which Plaintiff has not responded.

**IV. Conclusion**

The Defendants' motion for summary judgment (Doc. 45) is granted, and the case is closed.

IT IS SO ORDERED.

                                               s/ *David A. Katz*
                                               DAVID A. KATZ
                                               U. S. DISTRICT JUDGE